UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**SEP - 1 2015**

Clerk U S District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action Nos. 14-26-2 (RBW) |
| ) | 14-26-3 (RBW) |
| OYEBOLA H. BABARINDE and ) | |
| OYEBISI Z. BABARINDE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Pending before the Court is the defendants' oral motion for access to the medical records of the government's prior confidential informant and now witness, Rhonda Talley. See Transcript of May 18, 2015 Jury Selection ("May Tr.") at 38:3, 38:18–19; 39:7–9; see also Brief in Support of Motion for Production of Mental Health Records ("Defs.' Br.") at 2, ¶ 6. After carefully considering the parties' submissions in conjunction with the arguments presented during both the May 18, 2015 competency hearing and the August 4, 2015 motions hearing,[1] the Court denies the defendants' motion.

## BACKGROUND

The defendants have each been indicted and charged with Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371, Health Care Fraud in violation of 18 U.S.C. § 1347, and Illegal Payment in Connection with Federal Health Care Programs in violation of 42 U.S.C. § 1320a-7b(b)(2). See Indictment ¶¶ 1–23; see also Defs.' Br. at 1 ¶ 1. As grounds for acquiring Ms. Talley's medical records, the defendants contend that they are entitled to the records because they are challenging Ms. Talley's competency to testify as a government witness

---

[1] In addition to the filings already identified, the Court considered Rhonda Talley's Response to Oyebola Babarinde's Motion for Production of Mental Health Records ("Talley Opp'n").

1

during their trial. Upon the defendants learning about Ms. Talley's psychological diagnosis and challenging her competency, the Court conducted a competency hearing. See generally May Tr. During the competency hearing, Ms. Talley provided testimony about her recollection of the events about which she would be testifying, see e.g., id. at 5:3–9:3; 9:10–23, including her memory of her participation in the government's investigation, see id. at 10:24–13:8, her psychological diagnoses, see id. at 17:3–6, the medication she takes, see id. at 14:4–17:14 and the impact her medications have on her memory, see id.

At the conclusion of Ms. Talley's testimony, the defendants requested access to her medical records, see May Tr. at 38:3, 38:18–19, 39:7–9, and the government agreed that, in light of the circumstances, the defendants had the "right to request the records," see id. at 42:18–19. However, following the hearing, the government informed the Court that Ms. Talley did not consent to the release of her medical records, citing the psychotherapist-patient privilege. See E-mail from government to the Court (May 28, 2015, 4:30 P.M. EST) (on file with Court); see generally Talley Opp'n. Counsel was then appointed to represent Ms. Talley and after the matter was fully briefed, the Court held a hearing to assess whether the defendants are entitled to Ms. Talley's medical records. See Aug. 4, 2015 Minute Entry.

## DISCUSSION

The "psychotherapist-patient privilege" protects "confidential communications between a licensed psychotherapist [and licensed social workers] and [a] patient[ disclosed] in the course of diagnosis or treatment." See Jaffee v. Redmond, 518 U.S. 1, 15, 10–18 (1996). Records of these types "are protected from compelled disclosure under Rule 501 of the Federal Rules of

Evidence."[2] Id. (emphasis added). However, "[a] patient may waive the psychotherapist-patient privilege by knowingly and voluntarily relinquishing it, [which] may occur when <u>the substance of therapy sessions is disclosed</u> to unrelated third parties, . . . or when the privilege is not properly asserted during testimony." United States v. Bolander, 722 F.3d 199, 223 (4th Cir. 2013) (citing United States v. Hayes, 227 F.3d 578, 586 (6th Cir. 2000)) (emphasis added), cert. denied, __ U.S. __, 134 S. Ct. 549 (2013) "The burden rests on the person invoking the privilege to demonstrate its applicability, including the absence of any waiver of it." Id. at 222.

The defendants agree that as a general matter Ms. Talley's medical records are protected by the psychotherapist-patient privilege. See Defs.' Br. at 2–3. They argue, however, that they are nonetheless entitled to the medical records because Ms. Talley waived the privilege by: (1) "testif[ying] in open-court" at the May 18, 2015 competency hearing, id. at 6; (2) "discuss[ing] her mental condition with the prosecuting attorneys and the FBI agents when she was brought in to discuss her testimony at trial," id. at 5; and (3) applying for and receiving Supplemental Security Income ("SSI") benefits from the Social Security Administration ("SSA"), id. at 4–5. Ms. Talley, however, argues that "[i]t is axiomatic that a waiver cannot be operational unless it is knowingly and intelligently made," Talley Opp'n at 1, and that she "did not contemplate disclosure of her treatment in a public forum . . . [as each of] Ms. Talley's activities in these other contexts were made long before counsel was appointed for her[3] so it is impossible to state that she has knowingly and intelligently waived her privilege."[4] id. at 1–2.

---

[2] "The common law — as interpreted by United States courts in light of reason and experience — governs a claim of privilege unless . . . the United States Constitution, a federal statute, or rules prescribed by the Supreme Court [provides otherwise]." Fed. R. Evid. 501(a).

[3] Ms. Talley fails to address the defendants' argument that "the psychotherapist-patient privilege is not a constitutional privilege requiring the presence of counsel." Defs.' Br. at 4 (citing United States v. Romo, 413 F.3d 1044 (9th Cir. 2005)). However, because the Court does not reach the issue of whether Ms. Talley knowingly and voluntarily waived the privilege, the Court need not resolve this issue.

(continued . . .)

3

### A. Ms. Talley's Testimony During the May 18, 2015 Competency Hearing

Upon reviewing Ms. Talley's May 18, 2015 testimony, the Court cannot conclude that Ms. Talley waived her right to assert the psychotherapist-patient privilege because at no point was "the substance of [her] therapy sessions" disclosed. Bolander, 722 F.3d at 223. Moreover, Ms. Talley did not reveal any relevant "confidential communications between" herself and her doctors. Jaffee, 518 U.S. at 15. While it is certainly true that she identified her mental health diagnoses and described to the Court what medications she was taking and the impact those medications had on her emotional and cognitive abilities, see May Tr. at 14:4–18:8, Ms. Talley did not disclose "the substance of [any of her] therapy session[s]," Bolander, 722 F.3d at 222. And while Ms. Talley certainly acknowledged that her "doctor said that depression . . . can affect your memory because I told him[,] I said I can't remember stuff[,] [a]nd he said well, that's a symptom of your depression," May Tr. at 17:3–6, a patient "does not put [her] mental state in issue merely by acknowledging [s]he suffers from depression, for which[ s]he is not seeking recompense; nor may a defendant overcome the privilege by putting the [patient's] mental state in issue," Koch v. Cox, 489 F.3d 384, 391 (D.C. Cir. 2007) (declining to find an implicit waiver of the psychotherapist-patient privilege where the plaintiff "acknowledge[s] in a deposition that he suffers from depression and he referred to 'stress' and 'humiliation' in his answers to supplemental answers to interrogatories"). Additionally, it appears that shortly after Ms. Talley was informed that the defendants were seeking her medical records, she asserted her right to rely

---

( . . . continued)

[4] During the motions hearing, Ms. Talley's counsel argued that "there couldn't be any kind of waiver unless [Ms. Talley was] competent to make it. . . . [and] the Court has not yet made a finding of her competency." August 4, 2015 Transcript ("Aug. Tr.") at 17:11–14. However, the issue of Ms. Talley's competency has not yet been properly briefed and thus, the Court declines at this time to make any findings regarding Ms. Talley's competency.

4

on the privilege and obtained counsel.[5] See Bolander, 722 F.3d at 223 ("[I]t was incumbent upon [the privilege holder] to assert the psychotherapist-patient privilege in a timely fashion, rather than waiting until the eleventh hour to do so."). Thus, the court cannot conclude that, by merely relating her diagnoses, the medication she takes for the conditions and impact the medication has on her memory, Ms. Talley waived her right to the psychotherapist-patient privilege during her May 18, 2015 competency hearing.

### B. Ms. Talley's Discussions with Government Attorneys and FBI Agent

As to the defendants' argument that Ms. Talley "waived the privilege when she discussed her mental condition with the prosecuting attorneys and the FBI agents when she was brought in to discuss her testimony at trial," Defs.' Br. at 5, given the lack of information regarding what was disclosed about her mental health during these meetings, the Court cannot agree. Thus, any finding of waiver based on these discussions would be predicated on nothing more than pure conjecture. And given government counsel's obligation of candor as officers of the Court, the Court has no reason not to accept the government's representation that:

> Everything [Ms. Talley] disclosed to [the government] she disclosed on the stand to [the Court on May 18, 2015. The government does not] have any additional information about her mental health. . . . Everything she said on the stand is what [the government] knew. . . . [The government] didn't have any additional information [other] than that. And [it] never asked her to sign any kind of waiver.

---

[5] Notably, it does not appear that Ms. Talley is seeking to use her medical records in any manner to her benefit while simultaneously invoking the psychotherapist-patient privilege. See S.E.C. v. Lavin, 111 F.3d 921, 933 (D.C Cir 1997) (disallowing a party from invoking the psychotherapist-patient privilege after selectively disclosing confidential material to gain advantage in litigation). What occurred here is in stark contrast to the circumstances in Bolander, 722 F.3d at 199, a case upon which the defendants rely in arguing that Ms. Talley has waived her right to now assert the privilege. In Bolander, the defendant "willingly provided [his medical records] to his own expert" to advance his position that he should not be civilly committed. See id. at 223. The Court is unaware of any instance in which Ms. Talley has disclosed her medical records to any party to this litigation or for any purpose other than seeking treatment under circumstances totally unrelated to this case, assuming that this latter possibility actually occurred. Thus, the defendants' reliance on Bolander is misplaced.

5

Transcript of August 4, 2015 Motions Hearing ("Aug. Tr.") at 16:19–17:5. And the Court has already determined that the information provided during the competency hearing did not arise to the level of a waiver. Accordingly, for the reasons articulated above, the Court cannot find, based on the limited information before it, that Ms. Talley waived the psychotherapist-patient privilege during the discussions she had with government counsel.[6]

### C. Ms. Talley's Purported Application for SSI Benefits

As presented, the defendants' argument that "once [Ms. Talley] agreed to [receive SSI benefits], she waived any privileges attached to" the records she may have used in support of her claim for those benefits is based entirely on conjecture, see e.g., Defs.' Br. at 4–5 ("Based upon information and belief, Ms. Talley is receiving SSI benefits."); Aug. Tr. at 6:8–10 ("[T]here is . . . an assumption on [the defendants] part she is receiving SSI benefits . . . ." (emphasis added)). Thus, the Court cannot assess whether Ms. Talley's hypothetical application for SSI benefits amounted to a waiver of the psychotherapist-patient privilege because there is simply no evidence before the Court that Ms. Talley is receiving SSI benefits and, if so, the contents and context of any waiver which she may have signed in seeking those benefits.[7] See In re Grand Jury Investigation, 114 F. Supp. 2d 1054, 1055–56 (D. Or. 2000) (considered convincing the

---

[6] United States v. Crews, 781 F.2d 826 (10th Cir. 1986), a case cited by the defendants and which pre-dates the Supreme Court's recognition of the psychotherapist-patient privilege, see id. at 830 ("The Federal Rules of Evidence do not recognize a psychotherapist-patient privilege explicitly, . . . and this court has not yet determined whether to recognize such a privilege."), is not on point. The Crews court found that the defendant waived his right to the psychotherapist-patient privilege by openly discussing his statements made to a psychiatric nurse with Secret Service agents after receiving his Miranda warnings. Id. at 831. Here, at no time during her testimony did Ms. Talley say anything about discussions she had with her therapist about her mental condition, nor did she provide her testimony after being informed that she had the right not to answer any of the Court's, the government's, or the defense counsels' questions. Thus, Crews is distinguishable from this case. See generally May Tr.

[7] The defendants' reliance on In re Grand Jury Investigation, 114 F. Supp. 2d 1054, 1056 (D. Or. 2000) is misplaced. See Defs.' Br. at 5. In that case, the Court reviewed the waiver signed by the privilege holder and ultimately concluded, based on review of the substance of the waiver, that in signing the waiver, the defendant waived his right to later assert the psychotherapist-patient privilege. Here, the Court has not been presented with any purported waiver by Ms. Talley for its review, assuming any such waiver exists.

6

verbiage of the signed benefits application waiver stating "I consent that any physician . . . that has treated or examined me for any purpose . . . may furnish the [United States Department of Veterans Affairs] any information about myself, <u>and I waive any privilege which renders such information confidential</u>" in determining that the privilege had been waived (emphasis added)).

## CONCLUSION

For the foregoing reasons, the Court will deny the defendants' oral motion for production of Ms. Talley's mental health records.

**SO ORDERED** this 31st day of August, 2015.[8]

/s/ Reggie B. Walton
REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

7